Naomi Spector (SBN 222573)
Email: nspector@kamberlaw.com
**KAMBERLAW, LLP**
1501 San Elijo Road South, Ste.104
San Marcos, CA 92078
Phone: 310.400.1053
Fax: 212.202.6364

*Counsel for Plaintiff Christina Mendez and the putative Classes*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA MENDEZ, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>GLOBAL INSTITUTE OF STEM CELL THERAPY AND RESEARCH, USA, a California corp.; GIOSTAR LABS, INC., a California corp.; BIOSCIENCE AMERICAS, LLC, a Wyoming corp.;<br>ANAND SRIVASTAVA, M.S., PH.D, an Individual;<br>DEVEN PATEL, an Individual;<br>SIDDHARTH BHAVSAR, an Individual; and<br>SCOTT KIRKPATRICK, an Individual;<br><br>　　　　　　Defendants. | CASE NO.  '20 CV0915 CAB BLM<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Violations of Bus. & Prof. Code §17200 et seq. (UCL)<br>2. Violations of Bus. & Prof. Code §17500 et seq. (False Advertising)<br>3. Violations of Cal. Civ. Code §1750 et seq. (CLRA)<br>4. Breach of Express Warranty<br>5. Quasi-Contract<br>6. Breach of Fiduciary Duty<br>7. Fraudulent Concealment<br>8. Intentional Misrepresentation<br>9. Negligent Misrepresentation<br><br>**<u>Jury Trial Demanded</u>** |

Plaintiff, Christina Mendez, on behalf of herself and all others similarly situated, brings this class action against GLOBAL INSTITUTE OF STEM CELL THERAPY AND RESEARCH, USA; GIOSTAR LABS, INC; BIOSCIENCE AMERICAS LLC; ANAND SRIVASTAVA; DEVIN PATEL; SIDDHARTH BHAVSAR and SCOTT KIRKPATRICK (collectively, "Defendants") based on Defendants' scheme to wrongfully and unlawfully market and sell stem cell therapy to consumers nationwide via misrepresentations and omissions, and hereby alleges as follows:

## NATURE OF ACTION

1.    "Many people, especially ignorant people, want to punish you for speaking the truth, for being correct, for being you. Never apologize for being correct, or for being years ahead of your time. If you're right and you know it, [s]peak your mind. Even if you are a minority of one, the truth is still the truth."

2.    This quote from Mahatma Gandhi fronts the homepage of Defendants' Giostar.com website, through which Defendants purport to offer stem cell therapy for treatment of blood-related diseases and other medical conditions ("Treatment"), and is emblematic of Defendants' manipulation of ailing and vulnerable consumers who are seeking treatment for degenerative and sometimes terminal medical conditions.

3.    In a twisted juxtaposition, Defendants have used Gandhi—a cultural and religious icon—and a quote about truth-saying, to peddle their misrepresentations and lies.

4.    While Gandhi sought truth and change through nonviolent means, the false statements and material omissions made by Defendants have dire and sometimes fatal consequences.

5.    In Plaintiff's case, Defendants' misrepresentations, false statements, and material omissions induced her to undergo stem cell therapy for cancer

treatment.  Among other things, Defendants represented that the Treatment offered would be a "cure-all" for Plaintiff's disease.

6.     Plaintiff, who was  29 when she was diagnosed with Stage II Hodgkin lymphoma—one of the most treatable cancers—was symptom free for more than a year and given a favorable prognosis prior to seeking Treatment by Defendants.

7.     This all changed, however, after Defendants performed Treatment on Plaintiff.

8.     Defendants administered Treatment to Plaintiff without first requiring that Plaintiff undergo chemotherapy or radiation to kill the cancer causing cells in her body.  Furthermore, on information and belief, Defendants failed to match the cells injected into Plaintiff's body to Plaintiff's cells, causing rejection.

9.     Following Treatment by Defendants, Plaintiff's cancer rapidly accelerated from Stage II to Stage IV, Plaintiff's liver began to fail, and Plaintiff was told by a medical expert that it was unlikely she would survive for more than a year.

10.     The Treatment administered by Defendants—which cost tens of thousands of dollars—precipitated Plaintiff's fight for her life. As a result of the rapid acceleration of the cancer and failure of her liver, Plaintiff was forced  to undergo surgery, blood transfusions and eight months of aggressive chemotherapy before she entered remission.  To this day, Plaintiff continues to be medically monitored for a resurgence of the cancer and continues to undergo medical procedures to try to prevent its return.

11.     Through this class action, Plaintiff seeks to uphold the credo stated on the homepage of Defendant's website and expose the real truth about Defendants and the Treatment they offer.  Plaintiff seeks to prevent others from falling victim to Defendants' false statements and material omissions and from suffering as she did based on Defendants' misconduct.

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10

12.     Plaintiff brings this action individually and on behalf of those similarly situated and seeks to represent a National Class and California Subclass (defined *infra*.).  Plaintiff seeks monetary damages in the amount charged by Defendants for stem cell treatment, interest thereon, restitution, punitive damages, disgorgement of all benefits Defendants have enjoyed from their unlawful and/or deceptive business practices, reasonable attorneys' fees and costs, and equitable relief, as detailed herein.  In addition, Plaintiff seeks injunctive relief to stop Defendants' unlawful, unfair and fraudulent conduct.  Plaintiff makes these allegations based on her personal knowledge as to herself and her own acts and observations and, otherwise, on information and belief based on investigation of counsel.

11

## JURISDICTION AND VENUE

12
13
14
15
16

13.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(d) because this is a class action in which: (1) there are over 100 members in the proposed classes; (2) members of the proposed classes have a different citizenship from Defendants; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

17
18
19
20
21

14.     This Court has personal jurisdiction over Defendants because Defendants' contacts with the forum are continuous and substantial, and Defendants intentionally availed themselves of the markets within California, including by having their headquarters in California and marking and selling stem cell treatment and services to California consumers.

22
23
24
25
26
27

15.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants engage in continuous and systematic business activities within the State of California and in this judicial district.  Among other things, Defendants are headquartered in San Diego, California.  On their Giostar Website Defendants state that their corporate headquarters are located at 4660 La Jolla Village Drive, Suite 100 & 200, San Diego, CA 92122, United States.  In addition, payment by wire for

28

CLASS ACTION COMPLAINT

1  treatment by Defendants is processed from a Giostar bank account at an address
2  located in San Diego, California.  *See also* Declaration of Christina Mendez
3  Regarding Venue pursuant to Cal. Civ. Code §1780(d), attached as Exhibit A.

4  **PARTIES**

5  16.   Plaintiff CHRISTINA MENDEZ ("Plaintiff") is a resident of Orange
6  County, California who sought stem cell treatment through Defendants.  Plaintiff
7  relied on Defendants' Giostar Website and representations and false statements
8  made by Defendants, including that Treatment offered would improve or cure her
9  cancer.  Plaintiff's reliance on Defendants' misrepresentations and false statements
10  is typical of all class members in this regard.   The cost of Plaintiff's Treatment was
11  $22,500, which included three treatments, food, and transportation to and from the
12  local airport.  The amount charged by Defendants for Plaintiff's Treatment is
13  representative and typical of the amount charged by Defendants for stem cell
14  therapy.

15  17.   Defendant GLOBAL INSTITUE OF STEM CELL THERAPY AND
16  RESEARCH, USA ("GIOSTAR") is an active California Corporation,
17  headquartered at 13278 Birch Tree Lane, Poway, CA 92064, in San Diego County,
18  State of California, which does business in the State of California. According to its
19  public statements, GIOSTAR was formed with the vision to provide affordable stem
20  cell based therapies to those suffering from degenerative or genetic diseases and
21  unable to afford today's high cost of the treatment.

22  18.   Defendant GIOSTAR LABS, INC., is an active California Corporation,
23  headquartered at 13278 Birch Tree Lane, Poway, CA 92064, in San Diego County,
24  State of California.  GIOSTAR LABS is a subsidiary of GIOSTAR, which was
25  created to manufacture products for worldwide distribution. Defendant GIOSTAR
26  LABS, INC.'s products and services are located in and it is doing business in the
27  State of California.

28

**CLASS ACTION COMPLAINT**

19. Defendant BIOSCIENCE AMERICAS, LLC is a Wyoming Limited Liability Company, headquartered at 2122 E Highland Ave., #265, Phoenix, AZ 85016, Maricopa County, State of Arizona. According to a Fact Sheet published by Defendant Bioscience Americas, LLC in 2016, it was "**a recognized leader** in developing, marketing, and managing stem cell treatment centers" and it "is developing a global network of stem cell treatment centers to generate high income – creating a pre-IPO opportunity to offer exceptional returns." *See* Exhibit B attached hereto. Defendant BIOSCIENCE AMERICAS, LLC does business in the County of San Diego, including by raising capital for Defendant GIOSTAR, as described herein. In addition, on information and belief, Defendant BIOSCIENCE AMERICAS, LLC does business in San Diego County by soliciting money from investors located in San Diego and investing in corporations doing business in San Diego County.

20. Defendant ANAND SRIVASTAVA, M.S., Ph.D. ("Defendant Srivastava") is an individual residing in San Diego County, State of California. Defendant Srivastava is the Chairman, Co-Founder, owner, operator and/or controller of GIOSTAR and GIOSTAR LABS, and is responsible for the conduct alleged herein, including the false statements, misrepresentations and material omissions. Defendant Srivastava has authorized and ratified the actions and misconduct alleged herein and is, therefore, personally and directly liable to Plaintiff and members of the Class at to all Causes of Action.

21. Defendant DEVEN PATEL is an individual residing in San Diego County, State of California ("Defendant Patel"). Defendant Patel is the CEO, President and Co-Founder of GIOSTAR and is responsible for the conduct alleged herein, including the false statements, misrepresentations and material omissions. Defendant Patel is also the CFO and Director of GIOSTAR LABS. Defendant Patel has authorized and ratified the actions and misconduct alleged herein and is,

**CLASS ACTION COMPLAINT**

1   therefore, personally and directly liable to Plaintiff and members of the Class as to

2   all Causes of Action.

3       22.    Defendant SIDDHARTH BHAVSAR is an individual residing in San

4   Diego County, State of California ("Defendant Bhavsar").  Defendant Bhavsar is the

5   co-founder, CFO and COO of GIOSTAR and the Secretary and Director of

6   GIOSTAR LABS and is responsible for the conduct alleged herein, including the

7   false statements, misrepresentations and material omissions.  Defendant Bhavsar has

8   authorized and ratified the actions and misconduct alleged herein and is, therefore,

9   personally and directly liable to Plaintiff and members of the Class as to all Causes

10  of Action.

11      23.    Defendant SCOTT KIRKPATRICK is an individual residing in San

12  Diego County, State of California ("Defendant Kirkpatrick").     Defendant

13  Kirkpatrick is the CEO and Director of GIOSTAR LABS, and is responsible for the

14  conduct alleged herein, including the false statements, misrepresentations and

15  material omissions.  Defendant Kirkpatrick has authorized and ratified the actions

16  and misconduct alleged herein and is, therefore, personally and directly liable to

17  Plaintiff and members of the Class as to all Causes of Action.

18                          **FACTUAL ALLEGATIONS**

19      **Stem Cells and Stem Cell Therapy**

20      24.    Stem cells are unspecified cells of the human body from which other

21  cells with specialized functions are generated.  Stem cells can divide to form more

22  cells, which either become new stem cells or become specialized cells, such as blood

23  cells or bone cells.

24      25.    Stem cells can come from embryos, amniotic fluid and umbilical cord

25  blood, and from adult stem cells.  Adult stem cells are found in small numbers in

26  adult tissue, such as bone marrow or fat, and have a more limited ability to give rise

27  to specialized cells compared with embryonic cells.

28

**CLASS ACTION COMPLAINT**

26.     Research regarding the ability of stem cell therapy to promote the repair of diseased or injured tissue is ongoing.

27.     In cases where research has been conducted with regard to the treatment of disease through stem cells, researchers have performed stem cell transplants, also known as bone marrow transplants. A bone marrow transplant may use cells from a patient's own body, called an autologous transplant, or cells from a donor, called an allogeneic transplant.

28.     Haematopoietic stem cells (HSC), which give rise to other blood cells, have also been studied for the treatment of disease. Target cells are generally derived from bone marrow, peripheral blood or umbilical cord blood.  HSC transplant may remedy problems caused by inappropriate functioning of the haematopoietic system because the transplanted cells have the potential to generate other blood related function cells, such as erythrocytes and leukocytes.

29.     There are numerous limitations, however, to HSC transplant.  For example, there are a limited number of transplantable cells without an efficient way of gathering them.  In addition, it is difficult to find an antigen-matched donor for transplantation.   Viral contamination and immunoreactions are also risks of treatment.   In short, HSC transplant is a dangerous procedure with substantial potential consequences.

30.     Stem cell transplants are generally ineffective to directly treat cancer. Instead, stem cells may be used to restore blood-forming cells in patients whose cells have been destroyed by high doses of chemotherapy or radiation.  Specifically, when a patient receives high doses of chemotherapy and/or radiation therapy to kill cancer cells, those treatments also kill stem cells in the bone marrow.  It is only after the chemotherapy or radiation therapy is complete that stem cells should be introduced to replace the stem cells that were destroyed.

31.    To reduce the risks associated with a stem cell transplant, donor cells must match the patient's cells.  If donor cells do not match the host cells, the white blood cells from the donor may attack the host cells, which can result in organ damage, including damage to the liver.

**The FDA Has Issued Warnings About False Stem Cell Claims**

32.    The U.S. Food and Drug Administration ("FDA") has the authority to regulate stem cell products in the United States and, with limited exceptions, requires that products go through the FDA review process to determine safety and effectiveness through clinical trials.

33.    The FDA has issued numerous warnings about the safety of stem cell therapies.

34.    The FDA has stated that it "is concerned that some patients seeking cures and remedies are vulnerable to stem cell treatments that are illegal and potentially harmful."

35.    In addition, although the FDA recognizes that "[a]ll medical treatments have benefits and risks" it cautions that "unproven stem cell therapies can be particularly unsafe."

36.    The FDA has stated that "some clinics may inappropriately advertise stem cell clinical trials without submitting an IND (Investigational New Drug Application). Some clinics also may falsely advertise that FDA review and approval of the stem cell therapy is unnecessary. But when clinical trials are not conducted under an IND, it means that the FDA has not reviewed the experimental therapy to help make sure it is reasonably safe."

37.    According to the FDA, "[t]he only stem cell-based products that are FDA-approved for use in the United States consist of blood-forming stem cells (hematopoietic progenitor cells) derived from cord blood."

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Defendants Make Numerous False Statements and Material Omissions About the Stem Cell Therapy they Offer**

38.     Defendants are the owners and operators of the Global Institute of Stem Cell Therapy and Research ("Giostar").

39.     Defendants also own, operate and are responsible for the content of the website located at giostar.com (the "Giostar Website"), through which Defendants advertise "stem cell based therapy to aid those suffering from degenerative or genetic diseases around the world."

40.     Under the Therapy page of the Giostar Website, Defendants offer treatment for "blood-related diseases," including blood-related cancers, and provide information about "Stem Cell Therapy Under Development," including for chronic pain, muscular dystrophy, diabetes, and spinal cord injury, among others.

41.     The Giostar Website exemplifies Defendants' false statements, misrepresentations and material omissions about the Treatment offered, which can be summarized as follows:  (1) Defendants misrepresent that the stem cell therapy they perform can treat and cure disease, including genetic and blood-related disease; (2) Defendants misrepresent the process by which patients will receive Treatment; (3) Defendants misrepresent Defendant Srivastava's affiliations with the medical and research community by stating that he has connections with numerous doctors and facilities, which he does not in fact have; (4) Defendants misrepresent Defendant Srivastava's medical and scientific qualifications, such that he appears to be substantially more qualified than he actually is; and (5) Defendants misrepresent the reach and breadth of their institution by claiming that they have advanced treatment and research centers than they do not in fact have.

**CLASS ACTION COMPLAINT**

**Defendants Misrepresent that Treatment Can Treat and Cure Disease**

42.   Defendants misrepresent that the stem cell therapy they offer can treat "[b]lood-related diseases" including sickle cell anemia, leukemia, lymphoma and thalassemia.

43.   The Treatment offered by Defendants, including the way in which it is administered, does not treat or cure the diseases for which Defendants offer Treatment.

44.   In addition, stem cell therapy through donor or patient cells is not approved by the FDA to treat any of the diseases or conditions listed on the Giostar Website.

45.   The Treatment of blood-related diseases offered by Defendants generally consists of one or more rounds of intravenous injection of purported stem cells, followed by one or more rounds of administration of "antioxidants". There is no guarantee that what is injected is actually viable stem cells, nor do Defendants demonstrate that any injected donor cells are properly matched to patient cells. Moreover, as in Plaintiff's case, the injection administered by Defendants may be contaminated.

46.   By contrast, in limited clinical settings where stem cell therapy has been effective for treatment of blood-related disease, the treatment was provided following high doses of chemotherapy and/or radiation therapy and often after the use of high doses of immunosuppressants to destroy the disease causing cells. Only after these steps were performed were stem cells introduced, frequently with the patient in isolation to minimize infection.

47.   The administration of stem cells by Defendants to treat diseases such as cancer, without first destroying the disease causing cells by chemotherapy or radiation, is exceptionally dangerous and risks patient health and life.

**CLASS ACTION COMPLAINT**

48.     Furthermore, the failure to use a patient's own cells, or the injection of cells from an unmatched donor, can cause rejection, including where the stem cells attack a patient's healthy tissue resulting in illness and death.

49.     Despite the ineffectiveness of the treatment offered by Defendants, they make numerous false and misleading statements and material omissions about their ability to treat blood-related disease on the Giostar Website, including the following:

50.     ***Sickle Cell Anemia, Lymphoma and Thalassemia***.  Defendants make a similar false statement under the sickle cell anemia, lymphoma and thalassemia webpages that: "We have mastered the technology for isolating maximum number of viable stem cells allogeneically with the matched donor to treat various patients with SCAD [Lymphona/ Thalassemia]. We are the licensed, private organization with the excellent, well equipped state of the art facility to isolate, process and enrich the viable number of stem cells, which can be re infused back into the patient's body."

51.     This statement is false and misleading.   As described herein, on information and belief, Defendants do not perform the necessary process for ensuring matched donor cells.  On information and belief, Defendants also are not able to "enrich the viable number of stem cells."  Furthermore, Defendants are not licensed to perform stem cell Treatment in the United States.

52.     ***Leukemia***.  Defendants falsely state "GIOSTAR scientists have successfully differentiated the blood stem cells, which can change the defective blood stem cells of the body and make healthy blood cells to remove the cancerous blood cells."

53.     ***Lymphoma***.   On the lymphoma page of Defendants' website, Defendants describe the disease and how stem cell treatment can help.  Among other things, Defendants state that the patient "has to undergo complete destruction of

his/her own bone marrow and undergo infusion of bone marrow stem cells from allogenically matched donor."

54.   Despite recognition of the procedure for cancer cell destruction, Defendants do not perform the destruction of the bone marrow, nor do they ensure that the required process has been followed prior to administration of the Treatment. In addition, on information and belief, Defendants do not infuse bone marrow stem cells from an allogenically matched donor.

55.   ***Thalassemia***.  Defendants reiterate:  "Various studies have suggested that stem cells obtained from matched allogenic donor can be very effective for the condition, reversing it to be normal. The child has to undergo complete destruction of his/her own bone marrow and undergo infusion of bone marrow stem cells from allogenically matched donor." Again, Defendants fail to perform the recognized steps for destruction and, on information and belief, Defendants do not infuse bone marrow stem cells from an allogenically matched donor..

56.   Defendants also falsely claim: "once infused back in the body, these cells are known to revamp the cellular system in bone marrow as well as in damaged organs. Thus, the recovery period after the transplant, is found to be between 1 to 2 months; depending upon the child health, age and will power."

57.   Defendants' representations about their ability to treat "blood-related diseases" are false and materially misleading.  In addition, Defendants omit critical information concerning the viability of stem cell therapy for treatment of the listed conditions, including the risks associated with such treatment.

**Defendants Make Material Misrepresentations About Their Qualifications and Affiliations**

58.   In numerous publications, including on the Medical Advisory page of the Giostar website, Defendants made and continue to make false statements about their own qualifications and their support and affiliations with reputable medical

**CLASS ACTION COMPLAINT**

institutions, including the following: (1) the statements about Defendant Srivastava's education, academic appointments and clinical experience are patently untrue; (2) Defendants' purported affiliations with luminaries and leading research institutions do not exist; and (3) the institutions where Defendants have allegedly established stem cell clinics deny that the clinics have been set up.[1]

**Defendants' Representations About Defendant Srivastava's Qualifications Are False**

59.     Defendant Srivastava's co-founder, Defendant Patel, acknowledged in an email that some descriptions of Defendant Srivastava's prior academic appointments had been exaggerated, including the claims that Defendant Srivastava had been an associate professor in the department of cellular and molecular biology at UCLA's medical school, an associate professor at UC Irvine medical school, and an assistant professor at UC San Diego medical school.  According to the schools, Defendant Srivastava did not hold a single one of these positions.  *See* Exhibit C.

60.     Despite Defendant Patel's recognition of the falsity of these claims,  to date and as late as May of 2020, the Giostar Website continues to make false claims about Defendant Srivastava's qualifications and appointments, including as follows: "Dr. Anand Srivastava has been associated with leading universities and research institutions of USA.  In affiliation with University of California San Diego Medical College (UCSD), University of California Irvine Medical College (UCI), Salk Research Institute, San Diego, Burnham Institute For Medical Research, San Diego, University of California Los Angeles Medical College (UCLA), USA has developed several research projects and has an extensive research experience in the field of

---

[1] The falsity of these claims is described in detail in an article published in the Los Angeles Times on January 26, 2019, titled, "Column:  A stem cell clinic touts its links with leading scientists.  Some say they have no such connections." A copy of this article is attached hereto as Exhibit C.

**CLASS ACTION COMPLAINT**

Stem cell which is documented by several publications in revered scientific journals."

61.   The Giostar Website continues to falsely state Defendant Srivastava's prior academic positions, including as a "Visiting Associate Researcher: Department of Molecular, Cell and Development Biology, University of California Los Angeles (UCLA), CA, USA"; "Associate Project Scientist: Department of Stem Cells and Neurology, School of Medicine, University of California Irvine (UCI), Irvine, CA, USA"; and "Assistant Project Scientist: Cancer Center, School of Medicine, University of California San Diego (UCSD), La Jolla, CA, USA."

62.   In addition, "[t]he institutions where Srivastava says he set up stem-cell research labs dispute his claim; they and other institutions where Srivastava says he held faculty positions say those claims are untrue." *See* Exh. C.

63.   For example, the Salk Research Institute in La Jolla, where Srivastava claims he served on the faculty as a "senior scientist" and "directed [the] stem cell core facility" says neither of these claims is true. *Id.*

64.   Instead, according to the Salk Institute, Defendant Srivastava was hired as a researcher for a single year in February 2008 before he was moved to an unpaid collaborator position in February 2009, and ended his relationship with Salk that March. *Id.*

65.   As of May 2020, however, Defendants continue to misrepresent Defendant Srivastava's affiliations and prior appointments on the Giostar Website, including by continuing to state that Defendant Srivastava was a "Senior Scientist: Stem Cell Core Facility, The Salk Research Institute, La Jolla, CA, USA."

**Defendants' Representations About Institutional and Scientific Affiliations Are False**

66.   "The so-called Global Institute of Stem Cell Therapy and Research boasts that its medical advisory board comprises 'luminaries from Harvard,

**CLASS ACTION COMPLAINT**

University of California, San Diego (UCSD), University of California Irvine (UCI)' and other leading institutions. It says on its website that its founder, Anand Srivastava, is 'credited with setting up the stem cell research labs at top research institutions in [the] US including Salk Research Institute, Sanford-Burnham Institute, UCI, UCSD.' That could give prospective patients confidence that they were in sound medical hands. But three prominent scientists listed as board members say they have no connection with Giostar, and have repeatedly asked for their names to be removed from its website. Of 11 others listed as members of the advisory board as of Jan. 8, nine could not be reached or did not return calls or emails. One confirmed that he was a board member but referred questions to Giostar. Another acknowledged that he was a member, but said the board had never met and he had only exchanged phone calls with Giostar principals." *Id.*

67.    Specifically, the "experts" Giostar touts or has touted as members of its scientific and advisory board disclaim any relationship to Giostar. Dr. Evan Snyder, for example, is director of the Center for Stem Cells and Regenerative Medicine at the Sanford Burnham Prebys Medical Discovery Institute in La Jolla. Dr. Snyder states that he has no connection to Giostar, and should never have been listed as a board member. *Id.*

68.    Furthermore, Dr. Snyder cast doubt on the validity of the claims made by Giostar stating that he has "not seen data that the cells they're using are useful for [the] diseases [Giostar purports to treat]." *Id*.

69.    Likewise, Dr. Ewa Carrier, an expert in blood and marrow transplantation formerly at UC San Diego, disclaims any relationship to Giostar, despite being listed as a board member. Dr. Carrier also stated that she does not know about the work being conducted by Giostar and "didn't want to be involved in any entity doing clinical trials without FDA approval." *Id*.

**CLASS ACTION COMPLAINT**

70.     "A third scientist listed as a member of the advisory board . . . a professor of ophthalmology at University Eye Hospital, Heidelberg, Germany, told [the author] by email: 'I have no relationship with this company. I have never been contacted by Giostar and it seems they just took my name and placed it on their web page.' He says he does not work with stem cells." *Id*.

**Defendants' Representations About Stem Cell Labs Are False**

71.     In addition "[t]he institutions where Srivastava says he set up stem-cell research labs dispute his claim; they and other institutions where Srivastava says he held faculty positions say those claims are untrue." *Id*.

**Plaintiff's Experience Demonstrates that Defendants are Lying to the Public and Risking Consumer Health and Life**

72.     In April of 2016, Plaintiff was diagnosed with stage II classical Hodgkin lymphoma cancer.  At that time she was 29 years old.

73.     Stage 2 Hodgkin lymphoma is characterized as two or more affected lymph nodes areas on the same side of the diaphragm.

74.     Hodgkin lymphoma is considered one of the most treatable forms of cancer if found in Stage I or Stage II.  The five-year survival rate for Stage I or Stage II is between 90%-95%.

75.     Because she was reluctant to undergo chemotherapy or radiation therapy for cancer treatment, Plaintiff sought alternative treatments.

76.     Almost a year after her diagnosis, Plaintiff was pain free and symptom free.  Because she was doing well, she was told that stem cell therapy could be the cure-all for her cancer.

77.     Plaintiff was introduced to Defendants Patel and Srivastava to discuss stem cell therapy as an option to treat her cancer.  The treatment was described by Defendants as a "cure-all," as cutting-edge, and as revolutionizing the cancer industry.

17

**CLASS ACTION COMPLAINT**

78.    Plaintiff relied on Defendants' representations in deciding to undergo Treatment, including the representations on Defendants' website that stem cell therapy was an effective means to treat lymphoma.

79.    In March of 2017, Plaintiff received the documents to undergo stem cell therapy through Giostar.

80.    The total cost for Plaintiff's stem cell therapy "Treatment Plan" was $22,500, which included three stem cell transplants, hotel stays in India on two occassions, food, and transportation to and from the local airport.

81.    Although Plaintiff was originally informed that the Treatment would take place outside of the United States at a state of the art facility in Columbia, at the last minute, Defendants changed the location of the treatment to India.  Defendants provided Plaintiff with travel information, including an address to use to obtain a tourist visa to travel to India, which was placed under the name of Defendant Patel.

82.    Plaintiff arrived in India on May 15, 2017.   Although she was previously told that Defendants would use Plaintiff's own stem cells to perform the treatment, upon arrival she was informed that she was too thin for Defendants to use her own stem cells and she would instead receive donor cells.

83.    Plaintiff only received a blood test prior to receiving the donor cells, yet, Defendants purported to match her cells to those of an outside donor.

84.    Finding a close HLA match to transplant blood and bone marrow cells, however, can be difficult, particularly where the donor cells are not obtained from a relative.  On information and belief, Defendants failed to conduct the required steps to match Plaintiff's cells and did not provide cells from a matched donor.

85.    On May 16, 2017, Plaintiff received her first round of stem cell therapy and a round of antioxidants.  Both were administered intravenously and the entire treatment took approximately 3-6 hours.

86.    On May 17, 2017, Plaintiff received a second round of antioxidants.

**CLASS ACTION COMPLAINT**

87.     Plaintiff subsequently returned to the United States.

88.     On June 26, 2017, Plaintiff returned to India for her second and third stem cell injections.

89.     During the third round of treatment, the nurses were initially unable to place the valve in Plaintiff's vein for the intravenous injection.  Although they were able to do so after multiple attempts, Plaintiff suffered bruising and a punctured vein. When Plaintiff expressed concern about the inability to place the needle, she was told that she was dehydrated.

90.     Plaintiff did not feel well following the treatment.

91.     Plaintiff returned to the United States following the treatment.

92.     On or about July 4, 2017, Plaintiff began to experience pain and swelling in her abdomen as well as swelling in her neck.  In addition, she began to demonstrate early symptoms of jaundice, although she was unaware of the meaning behind the symptoms at that time.

93.     Plaintiff tried to reach Defendants Patel and Srivastava to discuss her symptoms and concerns, but was unsuccessful.

94.     Plaintiff eventually reached out to another doctor, who was able to put her in touch with Defendant Srivastava.

95.     When Plaintiff expressed her concerns about how she was feeling, Defendant Srivastava blamed Plaintiff's diet, saying that it was too clean.  Defendant Srivastava also told Plaintiff to trust the process of the Treatment, that it would take time for the cells to take effect, and not to take any action.

96.     On or about August 25, 2017, Plaintiff again informed Dr. Srivastava about the swelling in her neck and provided him with a photo of the swelling, which appeared as follows:

**CLASS ACTION COMPLAINT**



97.    On August 28, 2017, Dr. Srivastava responded and told Plaintiff to have blood work performed.  He also stated that sometimes the Treatment can cause swelling because the immune cells accumulate in the area to suppress or kill the "bad cells."

98.    At that time, and in reliance on Defendants' representations, Plaintiff believed that the swelling and pain could be side effects of the stem cell treatment, and that she needed to give the treatment more time to take effect.

99.    Plaintiff's condition continued to worsen.

100.   On October 27, 2017, Plaintiff went to the emergency room and was hospitalized for three days.

101.   Plaintiff was diagnosed with Stage IV Hodgkin lymphoma and liver failure. Plaintiff was informed that it was likely she would die within a year.

102.   At the time, Plaintiff resided in Nevada, but was unable to find a local doctor who would treat her.  Plaintiff ended up having to relocate to Los Angeles in order to receive medical treatment.

103.   Plaintiff was informed that her best chance for survival was to undergo chemotherapy.

**CLASS ACTION COMPLAINT**

104.   First, however, due to Plaintiff's severe jaundice, she had to undergo surgery in order to have stents placed in her bile duct to lower her bilirubin levels. Plaintiff was informed that if the procedure did not lower her levels, she would be placed on dialysis.  The doctor stated that this would be a last resort before hospice.

105.   On December 4, 2017, Plaintiff began chemotherapy.  She was given intravenous treatment and pills for eight days every 21 days, followed by shots.

106.   The chemotherapy resulted in burns on Plaintiff's stomach and thighs and Plaintiff suffered allergic reactions and had to have blood transfusions.

107.   Plaintiff suffered, among other things, nausea, hair loss, fluid retention, scarring, memory loss and extreme fatigue.

108.   Plaintiff underwent aggressive chemotherapy for eight months before she entered remission.

109.   The effects of Defendants' misconduct, however, are ongoing.

110.   From March through September of 2019, Plaintiff had to undergo immunotherapy and it is likely she may have to undergo additional immunotherapy treatment.

111.   During the immunotherapy treatment, one of the doctors informed Plaintiff that the stem cell therapy was not performed correctly and could have killed her.  Specifically, Plaintiff was told that stem cell therapy cannot be administered where a cancer patient has not first undergone chemotherapy because the stem cells cause the cancer cells to metastasize and replicate.  The doctors also informed her that the blood that was transfused by Defendants was likely contaminated.

112.   Accordingly, the Treatment administered by Defendants escalated Plaintiff's Stage II cancer to Stage IV over an extremely short period of time.

113.   Plaintiff lives in fear that the cancer will return and, based on the rapid escalation and deterioration of her condition due to the Treatment performed by Defendants, that Plaintiff will not be able to fight the cancer again.  In addition,

**CLASS ACTION COMPLAINT**

1 Plaintiff spent more than a year of her life receiving aggressive and invasive medical
2 treatment, which has not only had dire consequences on her overall health, but on
3 her ability to work and on her family.

4 **Defendants Seek To Profit From their Misconduct**

5 114.   In a 2015 press release, Defendant Bioscience Americas, LLC
6 announced that it had retained JCF Capital Advisor, LLC, a San Diego capital
7 advisory firm, to assist in the implementation of an international growth plan.

8 115.   In a 2016 Fact Sheet, in addition to reiterating misrepresentations
9 described herein, Defendant Bioscience Americas, LLC makes clear that it is
10 participating in the stem cell therapy business purely for financial gain: "With a
11 booming market for healthcare worldwide, soaring demand for medical care, and a
12 rapidly aging population, Bioscience Americas is developing a global network of
13 stem cell treatment centers to generate high income – creating a pre-IPO opportunity
14 to offer exceptional returns." *See* Exh. B.

15 116.   Under the heading "Investment Strategy," Defendant states: that it is
16 focused on "[m]eet[ing] the growing demand for treatment in underserved markets
17 to generate high income, with quarterly distributions to investors" and that its "exit
18 strategy" is to "resell high-performing treatment centers at a significant profit to
19 institutional investors or take the company public through an IPO." *Id.*

20 117.   Defendants, including Defendant Bioscience Americas, LLC, view
21 stem cell therapy as an economic opportunity, rather than a medical endeavor.
22 Defendants have compromised consumer health and safety for their own financial
23 gain, to the detriment of Plaintiff and Class members.

24 **CLASS DEFINITION AND CLASS ALLEGATIONS**

25 118.   Plaintiff brings this action as a class action pursuant to Federal Rules of
26 Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself, on behalf of all others

27

28

**CLASS ACTION COMPLAINT**

similarly situated, and as a member the Classes defined as follows (collectively, the "Class"):

> All citizens of the United States who, within the relevant statute of limitations periods, received stem cell therapy from Defendants ("Nationwide Class");
>
> All citizens of California who, within the relevant statute of limitations periods, received stem cell therapy from Defendants ("California Subclass").

119.   Excluded from the Class are: (i) Defendants, their assigns, successors, and legal representatives; (ii) any entities in which Defendants have controlling interest; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

120.   Plaintiff reserves the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

121.   This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

122.   **Numerosity:** Members of the Class are so numerous that joinder of all members is impracticable.  According to Defendants, they "successfully treated" 4,000 patients between 2011 and 2016.  Upon information and belief, the Nationwide Class consists of thousands of patients, dispersed throughout the United States, who received Treatment from Defendants, and the California Subclass

**CLASS ACTION COMPLAINT**

consists of hundreds or thousands of patients from California, who received Treatment from Defendants. Accordingly, it would be impracticable to join all members of the Class before the Court.

123. **Common Questions Predominate:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

a. Whether Defendants' representations and omissions about stem cell therapy are, or any single representation or omission is, false, misleading and/or deceptive;

b. Whether Defendants engaged in unlawful, unfair or deceptive business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*;

c. Whether Defendants engaged in deceptive advertising practices in violation of Cal. Bus. & Prof. Code § 17500, *et seq*.;

d. Whether Defendants violated the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.;

e. Whether Defendants committed a breach of express warranty;

f. Whether Defendants breached a fiduciary duty to Plaintiff and Class members;

g. Whether Defendants engaged in fraud;

h. Whether Defendants made intentional and/or negligent misrepresentations;

i. Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

j. Whether Plaintiff and the Class have sustained damage as a result of Defendants' unlawful conduct;

**CLASS ACTION COMPLAINT**

1                    k.  The proper measure of damages sustained by Plaintiff and the

2                        Class; and

3                    l.  Whether Defendants were unjustly enriched by their unlawful

4                        practices.

5      124.  **Typicality:**  Plaintiff's claims are typical of the claims of the members

6 of the Class she seeks to represent because Plaintiff, like the Class members, relied

7 on Defendants' misrepresentations and false statements in deciding to undergo

8 Treatment by Defendants.  Defendants' unlawful, unfair and/or fraudulent actions

9 concern the same business practices described herein irrespective of where they

10 occurred or were experienced.  Plaintiff and the Class sustained similar injuries

11 arising out of Defendants' conduct.  Plaintiff's and Class member's claims arise

12 from the same practices and course of conduct and are based on the same legal

13 theories.

14      125.  **Adequacy:**  Plaintiff is an adequate representative of the Class she

15 seeks to represent because her interests do not conflict with the interests of the

16 members of the Class Plaintiff seeks to represent.  Plaintiff will fairly and adequately

17 protect the interests of the members of the Class and has retained counsel

18 experienced and competent in the prosecution of complex class actions, including

19 complex questions that arise in consumer protection litigation.

20      126.  **Superiority and Substantial Benefit:**  A class action is superior to

21 other methods for the fair and efficient adjudication of this controversy, since

22 individual joinder of all members of the Class is impracticable and no other group

23 method of adjudication of all claims asserted herein is more efficient and

24 manageable for at least the following reasons:

25                    a.  The claims presented in this case predominate over any questions

26                        of law or fact, if any exists at all, affecting any individual

27                        member of the Class;

28

b. Absent a Class, the members of the Class will continue to suffer damage and Defendants' unlawful conduct will continue without remedy while Defendants profit from and enjoy their ill-gotten gains;

c. When the liability of Defendants has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

d. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class members can seek redress for the harm caused to them by Defendants.

127.   Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.

128.   The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

129.   The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are also met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

130.   Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**CLASS ACTION COMPLAINT**

**FIRST CAUSE OF ACTION**
**Unfair and Unlawful Business Acts and Practices**
**(Business and Professions Code § 17200, *et seq*.)**
**(*On Behalf of Plaintiff and the California Subclass*)**

131.   Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

132.   Defendants' conduct constitutes an unfair business act and practice pursuant to California Business & Professions Code §§ 17200, *et seq*. (the "UCL"). The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

133.   Plaintiff brings this claim seeking equitable and injunctive relief to stop Defendants' misconduct, as complained of herein, and to seek restitution of the amounts Defendants acquired through the unfair, unlawful, and fraudulent business practices described herein.

134.   Defendants' knowing conduct, as alleged herein, constitutes an "unfair" and/or "fraudulent" business practice, as set forth in California Business & Professions Code §§ 17200-17208.

135.   Defendants' conduct was and continues to be unfair and fraudulent because, directly or through its agents and employees, Defendants made uniform materially false representations and omissions.

136.   As described herein, Defendants misrepresented, among other things: the viability of the Treatment they offer to treat and cure disease and medical conditions; Defendants' qualifications; Defendants' affiliations, including in the medical and scientific community; and the specialization and breadth of Defendants' treatment centers.

137.   Defendants also made materially false representations and omissions

**CLASS ACTION COMPLAINT**

by failing to adequately disclose the risks associated with the Treatment, including: the risk that the Treatment would exacerbate or escalate the condition Defendants were purporting to treat; the risks associated with the manner by which patients would be treated, including the obtaining, matching and injection of stem cells; and the risk that the samples used would be contaminated.

138.   Defendants' conduct also constitutes an unfair and unlawful business act and practice because, as alleged herein, Defendants fail to comply with United States treatment requirements, despite being headquartered in the United States.[2]

139.   Defendants are aware that the representations and omissions they have made were and continue to be false and misleading.

140.   Defendants had an improper motive—to derive financial gain at the expense of accuracy or truthfulness and at the expense of patient health and safety—in their practices related to their false and misleading representations and material omissions, including by administration of stem cell therapy.

141.   There were reasonable alternatives available to Defendants to further Defendants' legitimate business interests, other than the conduct described herein.

142.   Defendants' misrepresentations of material facts, as set forth herein, also constitute an "unlawful" practice because they violate California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1770 and the laws and regulations cited herein, as well as the common law.

143.   Defendants' conduct in making the misrepresentations and omissions described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding

---

[2] Plaintiff does not allege any claims based on a substantive violation of FDA law or regulation and only references these requirements to the extent they provide a predicate basis for liability under state and common law, as set forth herein.

**CLASS ACTION COMPLAINT**

1    upon and burdensome to their competitors.  This conduct engenders an unfair
2    competitive advantage for Defendants, thereby constituting an unfair business
3    practice under California Business & Professions Code §§ 17200-17208.

4         144.   In addition, Defendants' conduct was, and continues to be, unfair in that
5    their injury to countless recipients of the Treatment is substantial, and is not
6    outweighed by any countervailing benefits to consumers or to competitors.

7         145.   Moreover, Plaintiff and members of the California Subclass could not
8    have reasonably avoided such injury.  Defendants' uniform, material
9    misrepresentations and omissions regarding the Treatment were likely to deceive,
10    and Defendants knew or should have known that their misrepresentations and
11    omissions were untrue and misleading.  Plaintiff decided to undergo the Treatment
12    in reliance on the misrepresentations and false statements made by Defendants, and
13    without knowledge of Defendants' misrepresentations and omissions.

14         146.   Plaintiff and members of the California Subclass have been directly and
15    proximately injured by Defendants' conduct in ways including, but not limited to,
16    the monies paid to Defendants, interest lost on those monies, and consumers'
17    unwitting support of a business enterprise that promotes deception and undue greed
18    to the detriment of consumers, such as Plaintiff and California Subclass members.

19         147.   As a result of the business acts and practices described above, Plaintiff
20    and members of the California Subclass, pursuant to § 17203, are entitled to an Order
21    enjoining such future wrongful conduct on the part of Defendants.

22         148.   As a result of the business acts and practices described above, Plaintiff
23    and members of the California Subclass, pursuant to § 17203, are also entitled to
24    such other Orders and judgments that may be necessary to disgorge Defendants' ill-
25    gotten gains and to restore to any person in interest any money paid for the Treatment
26    as a result of the wrongful conduct of Defendants.

27         149.   Pursuant to Civil Code § 3287(a), Plaintiff and the California Subclass
28

**CLASS ACTION COMPLAINT**

are further entitled to pre-judgment interest as a direct and proximate result of Defendants' unfair and fraudulent business conduct.  The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the California Subclass are entitled to interest in an amount according to proof.

## SECOND CAUSE OF ACTION
### Deceptive Advertising Practices
**(California Business & Professions Code §§ 17500, *et seq*.)**
**(*On Behalf of Plaintiff and the California Subclass*)**

150.   Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

151.   California Business & Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising . . . ."

152.   As described herein, Defendants violated § 17500 by, among other things making material false and uniform misrepresentations concerning: the viability of the Treatment they offer to treat and cure disease and medical conditions; Defendants' qualifications; Defendants' affiliations, including in the medical and scientific community; and the specialization and breadth of Defendants' treatment centers.

153.   Defendants also made materially false representations and omissions by failing to adequately disclose the risks associated with the Treatment, including: the risk that the Treatment would exacerbate or escalate the condition Defendants were purporting to treat; the risks associated with the manner by which patients would be treated, including the obtaining, matching and injection of stem cells; and the risk that the samples used would be contaminated.

154.   Defendants' deceptive practices were designed to induce reasonable consumers like Plaintiff to purchase and receive Treatment from Defendants. Defendants' uniform, material misrepresentations and omissions regarding the

**CLASS ACTION COMPLAINT**

Treatment were likely to deceive, and Defendants knew or should have known that their uniform misrepresentations and omissions were untrue and/or misleading. Plaintiff made the decision to undergo Treatment from Defendants in reliance on the false and misleading representations made by Defendants, and without knowledge of Defendants' misrepresentations and omissions.

155.   Plaintiff and members of the California Subclass have been directly and proximately injured by Defendants' conduct in ways including, but not limited to, the monies paid to Defendants, interest lost on those monies, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Subclass members.

156.   The above acts of Defendants were and are likely to deceive reasonable consumers in violation of § 17500.

157.   In making the statements and omissions alleged herein, Defendants knew or should have known that the statements and representations were untrue or misleading, and acted in violation of § 17500.

158.   Defendants continue to engage in unlawful, unfair and deceptive practices in violation of §17500.

159.   As a direct and proximate result of Defendants' unlawful conduct in violation of § 17500, Plaintiff and members of the California Subclass, pursuant to § 17535, are entitled to an Order of this Court enjoining such future wrongful conduct on the part of Defendants, and requiring Defendants to disclose the true nature of their misrepresentations and omissions.

160.   Plaintiff and members of the California Subclass also request an Order requiring Defendants to disgorge their ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendants by means of such acts of false advertising, plus interests and attorneys' fees.

**CLASS ACTION COMPLAINT**

1
2
3

**THIRD CAUSE OF ACTION**
**Consumer Legal Remedies Act**
**(Cal. Civ. Code § 1750, *et seq.*)**
**(*On Behalf of Plaintiff and the California Subclass*)**

4    161.   Plaintiff re-alleges and incorporates by reference the allegations
5
6    contained in the preceding paragraphs of this complaint, as though fully set forth
     herein.

7    162.   Plaintiff brings this action pursuant to California's Consumer Legal
8
     Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*.

9    163.   The CLRA provides that "unfair methods of competition and unfair or
10
11   deceptive acts or practices undertaken by any person in a transaction intended to
     result or which results in the sale or lease of goods or services to any consumer are
12   unlawful."

13   164.   The Treatment constitutes "goods or services," as defined by the CLRA
14
     in California Civil Code §1761(a).

15   165.   Defendants are a "person," as defined by the CLRA in California Civil
16
     Code §1761(c).

17   166.   Plaintiff and members of the California Subclass are "consumers" as
18
     defined by the CLRA in California Civil Code §1761(d).

19   167.   Purchase of the Treatment is a "transaction[]" as defined by the CLRA
20
     in California Civil Code §1761(e).

21   168.   As described herein, Defendants violated Section 1770(a)(5) by
22
23   representing that the Treatment provided to consumers have "characteristics, . . .
     uses [or] benefits . . . which [they] do not have".

24   169.   Similarly, Defendants violated section 1770(a)(7) by representing that
25
26   the Treatment provided to consumers "are of a particular standard, quality, or grade
     . . . if they are of another" by, among other things, falsely representing that the

27
28

**CLASS ACTION COMPLAINT**

Treatment can treat and/or cure disease and other medical conditions, the method by which the Treatment will be provided, and the quality of the Treatment administered.

170.    In addition, as described herein, Defendants violated section 1770(a)(9) by advertising the Treatment to consumers "with intent not to sell [it] as advertised".

171.    Defendants' uniform, material, misrepresentations and omissions regarding the Treatment were likely to deceive, and Defendants knew or should have known that their misrepresentations and omissions were untrue and misleading.

172.    Plaintiff and members of the California Subclass could not have reasonably avoided injury.  Plaintiff and members of the California Subclass were unaware of the existence of facts that Defendants suppressed and failed to disclose and Plaintiff and members of the California Subclass would not have purchased or chosen to undergo the Treatment had they known the truth.

173.    Plaintiff and members of the California Subclass have been directly and proximately injured by Defendants' conduct in ways including, but not limited to, the monies paid to Defendants and interest lost on those monies.

174.    Given that Defendants' conduct violated § 1770(a)(5), Plaintiff and members of the California Subclass are entitled to seek and seek injunctive relief to put an end to Defendants' violations of the CLRA.

175.    Moreover, Defendants' conduct is malicious, fraudulent, and wanton in that Defendants intentionally misled and withheld material information from consumers to make and increase sales.

176.    Pursuant to California Civil Code § 1782(a), on April 28, 2020, Plaintiff on her own behalf, and on behalf of members of the California Subclass, notified Defendants of the alleged violations of the Consumer Legal Remedies Act by letter

CLASS ACTION COMPLAINT

setting forth Plaintiff's claims.[3]

177.   Plaintiff further requests that the Court enjoin Defendants from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to § 1780(a)(2).

## FOURTH CAUSE OF ACTION
### Breach of Express Warranty
### (*On Behalf of Plaintiff, the Nationwide Class, and California Subclass*)

178.   Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein.

179.   By advertising and selling the Treatment at issue, Defendants made promises and affirmations of fact, including through their Giostar Website, as described herein.  This advertising constitutes express warranties and became part of the basis of the bargain between Plaintiff and members of the Class, and Defendants.

180.   Defendants, through their advertising, created express warranties, including that the Treatment would treat and/or cure blood-related diseases and other medical conditions.   As described herein, Defendants made promises and affirmations of fact that:

- "We have mastered the technology for isolating maximum number of viable stem cells allogeneically with the matched donor to treat various patients with SCAD. We are the licensed, private organization with the

---

[3] Once the 30-day statutory period has run, Plaintiff will seek to amend her Complaint to seek compensatory, monetary and punitive damages, in addition to equitable and injunctive relief, and will request that this Court enter such Orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief as is provided in California Civil Code § 1780.

**CLASS ACTION COMPLAINT**

excellent, well equipped state of the art facility to isolate, process and enrich the viable number of stem cells, which can be re infused back into the patient's body."

- "GIOSTAR scientists have successfully differentiated the blood stem cells, which can change the defective blood stem cells of the body and make healthy blood cells to remove the cancerous blood cells."

- "[O]nce infused back in the body, these cells are known to revamp the cellular system in bone marrow as well as in damaged organs. Thus, the recovery period after the transplant, is found to be between 1 to 2 months; depending upon the child health, age and will power."

181.  In addition, Defendants made promises and affirmations of fact about their qualifications and affiliations, including with respect to: (1) Defendant Srivastava's education, academic appointments and clinical experience; (2) Giostar's affiliations with luminaries and leading research institutions; and (3) the institutions where Giostar has established stem cell clinics.

182.  The express warranties appear on the Giostar Website and specifically relate to the goods and services being sold.

183.  As described herein, and despite Defendants' express warranties, the Treatment was and is not what Defendants represented it to be.  In addition, Defendants' affiliations and qualification are not as Defendants have represented.

184.  Accordingly, Defendants breached express warranties because the Treatment and Defendants' qualifications to perform and provide such Treatment do not conform to Defendants' affirmations and promises.

185.  Plaintiff provided Defendants with pre-suit notice of the breach of warranty, including but not limited to by the April 28, 2020 letter.

186.  Plaintiff and members of the Class paid for and underwent Treatment by Defendants.

**CLASS ACTION COMPLAINT**

187.   As a direct and proximate result of Defendants' breach of express warranty, Plaintiff and members of the Class were harmed, including in the amount of the price paid for Treatment.  Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other general and specific damages including, but not limited to, the amount paid for Treatment, and any interest that would have accrued on those monies, in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**QUASI-CONTRACT**
(***On Behalf of Plaintiff, the Nationwide Class, and California Subclass***)

188.   Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

189.   By purchasing Treatment, Plaintiff and members of the Class conferred a benefit on Defendants in the form of the purchase price of the Treatment.

190.   Defendants had knowledge of such benefits.

191.   Defendants appreciated the benefit because, were consumers not to purchase the Treatment, Defendants would not generate revenue from the sales of the Treatment.

192.   Defendants' acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendants' fraudulent and misleading representations and omissions and unlawful conduct.

193.   Equity cannot in good conscience permit Defendants to be economically enriched for such actions at the expense of Plaintiff and members of the Class, and therefore restitution and/or disgorgement of such economic enrichment is required.

/ / /

/ / /

/ / /

**CLASS ACTION COMPLAINT**

**SIXTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**
(***On Behalf of Plaintiff, the Nationwide Class, and California Subclass***)

194.   Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

195.   A fiduciary, healthcare relationship existed between Plaintiff and members of the Class and Defendants, including based on a patient/provider relationship for the Treatment sought by Plaintiff and Class members.

196.   Defendants owed an duty to Plaintiff and Class members to act with the utmost good faith and in the best interests of Plaintiff and the Class.

197.   Defendants breached their fiduciary duty as described herein, including by making material misrepresentations and omissions concerning: the viability of the Treatment they offer to treat and cure disease and other medical conditions; the manner in which the Treatment would be performed; Defendants' qualifications; Defendants' affiliations, including in the medical and scientific community; the specialization and breadth of Defendants' treatment centers; and the risks associated with Treatment.

198.   In addition, Defendants breached their fiduciary duty by compromising Plaintiff and Class member's health and safety based on Defendants' desire for personal, financial gain.

199.   As described herein, Defendants breached their duty of good faith and fair dealing.

200.   Defendants' actions were intentional, reckless, oppressive and wanton.

201.   As a direct result of Defendants' misconduct, Plaintiff and Class members were injured in ways including, but not limited to, the monies paid to Defendants and interest lost on those monies.

**CLASS ACTION COMPLAINT**

## SEVENTH CAUSE OF ACTION
### Fraudulent Concealment
### (*On Behalf of Plaintiff, the Nationwide Class, and California* Subclass)

202.  Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

203.  A fiduciary, healthcare relationship existed between Plaintiff and members of the Class and Defendants, including based on a patient/provider relationship for the Treatment sought by Plaintiff and Class members.

204.  Defendants had a fiduciary duty to disclose all information material to Plaintiff's and Class member's decision to undergo Treatment by Defendants.

205.  As alleged herein, Defendants intentionally failed to disclose certain facts to Plaintiff and Class members about the Treatment, including facts related to: the viability of the Treatment they offer to treat and cure disease and other medical conditions; the manner in which the Treatment would be performed; Defendants' qualifications; Defendants' affiliations, including in the medical and scientific community; the specialization and breadth of Defendants' treatment centers; and the risks associated with Treatment.

206.   Plaintiff and members of the Class could not have readily discovered the facts that Defendants failed to disclose.  Among other things, Plaintiff and members of the Class reasonably relied on Defendant Srivastava's representations as a medical professional, including that the Treatment would remedy the medical conditions for which it was sought.

207.  Plaintiff and members of the Class did not know of the concealed facts.

208.  Defendants intended to deceive Plaintiff and members of the Class by concealing the facts about the Treatment, as described herein.

**CLASS ACTION COMPLAINT**

209.   Had the omitted and concealed information been disclosed, Plaintiff and members of the Class would have acted differently, including by not seeking to obtain Treatment, or seeking Treatment under different terms.

210.   As a direct result of Defendants' misconduct, Plaintiff and Class members were injured in ways including, but not limited to, the monies paid to Defendants and interest lost on those monies.

211.   Defendants' concealment was a substantial factor in causing Plaintiff and class Members harm.

## EIGHTH CAUSE OF ACTION
### Intentional Misrepresentation
(*On Behalf of Plaintiff, the Nationwide Class, and California Subclass*)

212.   Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

213.   As described herein, Defendants made intentional misrepresentations including related to: the viability of the Treatment they offer to treat and cure disease and other medical conditions; the manner in which the Treatment would be performed; Defendants' qualifications; Defendants' affiliations, including in the medical and scientific community; the specialization and breadth of Defendants' treatment centers; and the risks associated with Treatment.

214.   Plaintiff and members of the Class did not know of the falsity of Defendants' representations and believed them to be true.

215.   Plaintiff and members of the Class could not have readily discovered the facts that Defendants failed to disclose.   Among other things, Plaintiff and members of the Class reasonably relied on Defendant Srivastava's representations as a medical professional, including that the Treatment would remedy the medical conditions for which it was sought.

216.   Defendants made these misrepresentations with wanton and reckless disregard for Plaintiff's and Class member's health and safety and for Defendants' own personal gain.

217.   As a direct result of Defendants' misrepresentations, Plaintiff and members of the Class were harmed as described herein.

## NINTH CAUSE OF ACTION
### Negligent Misrepresentation
### (*On Behalf of Plaintiff, the Nationwide Class, and California Subclass*)

218.   Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

219.   As described herein, Defendants made negligent misrepresentations including related to: the viability of the Treatment they offer to treat and cure disease and other medical conditions; the manner in which the Treatment would be performed; Defendants' qualifications; Defendants' affiliations, including in the medical and scientific community; the specialization and breadth of Defendants' treatment centers; and the risks associated with Treatment.

220.   Plaintiff and members of the Class did not know of the falsity of Defendants' representations and believed them to be true.

221.   Plaintiff and members of the Class could not have readily discovered the facts that Defendants failed to disclose.   Among other things, Plaintiff and members of the Class reasonably relied on Defendant Srivastava's representations as a medical professional, including that the Treatment would remedy the medical conditions for which it was sought.

222.   Defendants made these misrepresentations with wanton and reckless disregard for Plaintiff's and Class member's health and safety and for Defendants' own personal gain.

**CLASS ACTION COMPLAINT**

223.    As a direct result of Defendants' misrepresentations, Plaintiff and members of the Class were harmed as described herein.

## PRAYER

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendants as follows:

A.    For an order certifying the Nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Nationwide Class and California Subclass; and naming Plaintiff's attorneys as Class Counsel to represent the Nationwide Class and California Subclass;

B.    For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

C.    For an order awarding, as appropriate, compensatory and monetary damages, and restitution or disgorgement to Plaintiff and the Class for all causes of action;

D.    For an order requiring injunctive relief, including that Defendants: (i) immediately cease and desist from making any and all misrepresentations and false statements, including on their Giostar Website; (ii) cease any and all unlawful operations from their facility located in La Jolla, California; and (iii) engage in corrective action;

E.    For an order awarding attorneys' fees and costs;

F.    For an order awarding punitive damages;

G.    For an order awarding pre-and post-judgment interest; and

H.    For such other and further relief as the Court deems just and proper.

**CLASS ACTION COMPLAINT**

DATED:  May 15, 2020

**KAMBERLAW, LLP**


By:  <u>/s/ *Naomi B. Spector*   </u>
     Naomi B. Spector, Esq.

*Attorneys for Plaintiff and the putative Classes*

**CLASS ACTION COMPLAINT**